```
                   United States District Court
                     District of Massachusetts
```

|                                        |   |                      |
|----------------------------------------|---|----------------------|
| **United States of America,**          | ) |                      |
|                                        | ) |                      |
| v.                                     | ) |                      |
|                                        | ) |                      |
| **Brandy Soto-Lara,**                  | ) | Criminal Action No.  |
|                                        | ) | **23-10027-NMG**     |
| Defendant.                             | ) |                      |
|                                        | ) |                      |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Brandy Soto-Lara ("Soto-Lara" or "defendant") has been indicted on a single-count of possession with intent to distribute cocaine and 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1). The government also brings a drug forfeiture allegation under 21 U.S.C. § 853.

Currently before the Court are defendant's motions to suppress evidence and to dismiss the indictment. For the reasons that follow, both motions will be denied.

**I. Background**

    **A. The November 2018 Investigation**

In November, 2018, the Boston Police Youth Violence Strike Force ("YVSF") commenced an investigation into the defendant after having received uncorroborated evidence that he was in

possession of an assault rifle.  Defendant had been previously arrested for Unlawful Possession of a Firearm and was prohibited from possessing any kind of firearm.

YVSF officers conducted both direct and electronic pole camera surveillance of defendant's purported residence at 58 Adams Street in the Dorchester section of Boston, MA.  Officers attest that defendant was seen moving in and out of the residence multiple times each day and operating a black 2014 Jeep Grand Cherokee.

 Officers also monitored defendant's SnapChat account.  On November 24, 2018, they allegedly observed SnapChat videos of defendant in the Jeep Grand Cherokee that included what they believed to be an AR-15 assault rifle.

Based on the SnapChat video, officers checked previously recorded pole camera footage where they observed defendant seated in the Jeep Grand Cherokee using his cell phone camera. The timing of the pole camera footage roughly matched the time at which defendant allegedly posted the SnapChat videos in question.  They also observed defendant wearing a light gray "Nike Tech Fleece Sweat Suit," a puffy black vest, a "True Religion Men's Ribbed Knit Watch Cap" and a thick gold ring in both the SnapChat video and the pole camera footage.

On November 28, 2018, officers applied for a warrant to search defendant's purported residence at 58 Adams Street

Apartment #1 ("Home Warrant") for 1) the previously mentioned clothes and jewelry and 2) "cellphones, Personal papers in the name of Brandy Soto-Mara [sic]." Officers also applied for warrants to search the Jeep Grand Cherokee ("Car Warrant") and defendant's person ("Body Warrant"). The Car Warrant and Body Warrant authorized searches for 1) the previously mentioned clothes and jewelry, 2) cellphones and personal papers of defendant and 3) a black and green AR-15 and several forms of related evidence such as ammunition. The application was supported by an affidavit of Detective Brian L. Ball ("Detective Ball") and the warrants were issued on the same day by Boston Municipal Court Justice Coffey.

Later that day, officers executed the three search warrants and defendant was taken into custody and allegedly given Miranda warnings. Shortly thereafter, defendant signed a Miranda waiver form.

### B. Defendant's Cooperation with the ATF

Pursuant to the same November, 2018 investigation, defendant was also charged with a number of state drug and firearm offenses in Boston Municipal Court.

In April, 2021, the Massachusetts Superior Court suppressed the pole camera evidence holding that the evidence was illegally obtained under state law. The state charges were dismissed in

September, 2021, but other unspecified state drug and gun charges apparently remain pending.

In August, 2022, defendant avers that he was arrested for an unrelated incident and detained at the Nashua Street Jail. There, defendant claims that two officers escorted him to a private room and inquired as to whether he would be willing to work as a Confidential Informant ("CI").

Defendant asserts, that at the meeting, two officers coerced his agreement to work as a CI without the presence of his attorney, Tim Bradl.  He contends the officers told him that he could be deported due to the pending state charges and that the officers could help him if he cooperated.

The meeting ended without agreement.  Several days later, defendant avers that he was again brought to a private meeting, this time with both a state officer and an ATF agent.  The officers purportedly told him that he could receive a lengthy prison sentence if he did not cooperate whereupon he agreed to work as a CI for the ATF.

The Government asserts that, 1) in December, 2022, while conducting a controlled buy on behalf of the ATF, defendant embezzled ATF funds and 2) subsequently, defendant framed an investigative target as the supplier of an illegal firearm.

In January, 2023, defendant was charged in the present case and shortly thereafter, he was removed for cause as a CI.

**II.   Motion to Suppress**

In support of his motion to suppress evidence obtained as a result of the Warrants and defendant's conversation with officers, defendant raises five arguments: 1) the magistrate judge erred in finding that the Affidavit established probable cause for the issuance of a warrant, 2) the request in the Home Warrant to search "Personal papers in the name of Brandy Soto-Mara [sic]" was overbroad, 3) the pole camera surveillance was an unconstitutional, warrantless search, 4) upon being taken into custody, defendant did not voluntarily waive his Miranda rights and all statements made to police at that time should be suppressed and 5) officers lacked probable cause to arrest defendant and all statements he made to officers in front of the 58 Adams Street residence should be suppressed.

   **A.   Probable Cause for the Search Warrants**

Defendant contends that the Home Warrant is invalid because it was not based upon probable cause.  He asserts that the application provided insufficient reason to believe that defendant resided specifically in Apartment #1 of the 58 Adams Street triple-decker apartment building at the time of the search.

A magistrate judge's finding as to probable cause is entitled to "great deference". Illinois v. Gates, 462 U.S. 213, 236 (1983).  The decision to issue a search warrant should be

-5-

reversed only if there is "no substantial basis for concluding that probable cause existed." United States v. Dixon, 787 F.3d 55, 58-59 (1st Cir. 2015) (citation omitted).

Probable cause exists when, based upon common sense and the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. A warrant application must demonstrate probable cause to believe that (1) a crime has been committed (the "commission" element) and (2) enumerated evidence of the offense will be found at the place searched (the "nexus" element). United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999).

Defendant's challenge here goes to the "nexus" element of the probable cause inquiry. The totality of the circumstances, as set forth in the Affidavit, establish a sufficient probability that the Home Warrant would uncover evidence pertinent to the charge of illegal firearm possession.

As defendant concedes, the Affidavit establishes that investigators saw defendant enter and leave 58 Adams Street multiple times each day. The Affidavit also describes how investigators saw defendant take a left turn toward Apartment #1. Finally, the Affidavit identifies 58 Adams Street as a triple-decker with three mailboxes. It was therefore reasonable for investigators to infer that each floor was a distinct unit

and that defendant's movement took him into the first-floor apartment (i.e., "Apartment #1").  Defendant's motion to suppress the Home Warrant for lack of probable cause will be denied.

**B. Particularity of the Home Warrant**

Defendant next seeks to suppress any material seized pursuant to the portion of the Home Warrant authorizing a search of "[p]ersonal papers in the name of Brandy Soto-Mara [sic]." He contends that portion of the Home Warrant fails the particularity requirement of the Fourth Amendment because it places insufficient limitations on the papers to be seized.

The Fourth Amendment proscribes general warrants "to prevent law enforcement officers from rummaging through an individual's belongings at will." United States v. Beckett, 321 F.3d 26, 33 (1st Cir. 2003).  Under the particularity requirement, a search warrant 1) must include sufficient information to guide and control the judgment of the executing officer in deciding where to search and what to seize and 2) cannot be overbroad or include items that should not be seized. United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013).

The Government responds that the description of the items to be searched in the warrant is limited by the affidavit which was incorporated by reference. See United States v. Burgos-Montes. 786 F.3d 92 (1st Cir. 2015).

This Court agrees. The Home Warrant states that the Affidavit is incorporated by reference and the portion authorizing a search of Defendant's "[p]ersonal papers in the name of Brandy Soto-Mara [sic]" is therefore limited by the Affidavit

> seeking any personal papers/documentation in the name of Brandy Soto-Lara indicating dominion and control of the residence and vehicle described above, including mementos, trophies and press clippings, etc. related to this crime and/or other criminal activities.

As limited by the affidavit, the Home Warrant authorizes a search for papers that would establish control of the residence and vehicle related to the crimes charged. Accordingly, the Home Warrant is sufficiently particularized.

In addition, the Government persuasively asserts that defendant's personal papers may reflect access, control and ownership of the residence or the firearm and, therefore, have a sufficient nexus to the crime alleged.

Defendant's motion to suppress personal papers seized during the search will be denied.

**C. Warrantless Pole Camera Surveillance**

Defendant contends that evidence obtained or derived from pole camera surveillance of his residence amounts to a warrantless search and should be suppressed.

The Government correctly responds that United States v. Bucci remains controlling precedent, notwithstanding the recent

-8-

split decision of the First Circuit Court of Appeals in United States v. Moore-Bush. Bucci held that an eight-month period of pole camera surveillance of the front of a defendant's home did not constitute a "search" under the Fourth Amendment. See 582 F.3d 108 (1st Cir. 2009).

Bucci compels the same conclusion here. The 24 days of pole camera surveillance of 58 Adams Street did not constitute a Fourth Amendment search and defendant's motion to suppress evidence gathered as a result of the pole camera surveillance will be denied.

**D. Police Interrogation of the Defendant**

Defendant asserts that he did not knowingly and voluntarily sign a waiver of his Miranda rights and that statements he made to authorities should be suppressed. The government bears the burden of proving, by a preponderance of the evidence, that the waiver of Miranda rights by defendant was knowing, intelligent and voluntary. See United States v. Earle, 473 F.Supp.2d 131, 136 (D. Mass. 2005).

This Court convened an evidentiary hearing to explore further as to whether the defendant properly waived his Miranda rights. The Government called Detective Ball to testify. On direct examination, Detective Ball stated that he read Miranda warnings to defendant at 58 Adams Street while the search of the residence was ongoing. He also testified that defendant

received Miranda warnings again at the station before he signed the waiver form.

Detective Ball averred that, based on the hundreds of interviews he has conducted over his 20 years of experience, he believes that defendant's waiver of his Miranda rights was knowing, intelligent and voluntary. Detective Ball further noted that defendant has been the subject of police interrogation in the past and is very familiar with Miranda warnings.

On cross examination, counsel for defendant did not inquire further about the alleged Miranda warnings at 58 Adams Steet or later at the police station. Nor did counsel for defendant elicit testimony that would suggest that defendant did not voluntarily, intelligently and knowingly waive his Miranda rights. The Government has met its burden and the motion to suppress will be denied.

**E. Probable Cause to Arrest Defendant**

Finally, counsel for defendant maintains that authorities lacked probable cause to arrest defendant at Suffolk County Superior Court or to thereafter detain him. Counsel moves to suppress all statements defendant made to officers while handcuffed in the back of the police cruiser, including statements made to Detective Ball in front of 58 Adams Street.

A warrantless arrest of an individual in a public place for a felony is permissible upon a finding of probable cause. Maryland v. Pringle, 540 U.S. 366, 370 (2003).

As the Government correctly contends, there was probable cause to believe that, at the time of his arrest, defendant unlawfully possessed a firearm. As discussed supra, officers had obtained evidence just four days prior from both pole camera surveillance and SnapChat that defendant illegally possessed a firearm. His motion to suppress for lack of probable cause to effectuate his arrest will be denied.

### III. Motion to Dismiss

Defendant claims that he was coerced into becoming a CI for ATF in violation of his Sixth Amendment rights, that he was charged only after his cooperation went awry and that the indictment should therefore be dismissed for "outrageous government misconduct."

Outrageous government misconduct is grounds, in the most extreme of circumstances, for dismissal of a criminal indictment. See United States v. Guzman, 282 F.3d 56, 59 (1st Cir. 2002) (citing United States v. Russell, 411 U.S. 423, 431-32 (1973)). To warrant dismissal, the misconduct must be so "egregious as to violate due process by shocking ... the

-11-

universal sense of justice." United States v. Therrien, 847 F.3d 9, 14 (1st Cir. 2017) (internal quotation marks omitted).

Because "the law frowns on the exoneration of a defendant for reasons unrelated to his guilt or innocence," the government misconduct doctrine will be invoked only in truly exceptional circumstances. Guzman, 282 F.3d at 59.

This Court is unaware of any situation in which the doctrine has been enforced in this Circuit, see United States v. Anzalone, 923 F.3d 1, 6 (1st Cir. 2019), and the facts defendant alleges here do not warrant being the first.  The Government correctly contends that no Sixth Amendment violation follows from the defendant's two meetings with officers to discuss becoming a CI because no federal charges were yet pending.  The pending state charges have no bearing because the Sixth Amendment right to counsel is offense specific. See Texas v. Cobb, 532 U.S. 162, 167 (2001).

In his reply brief, defendant concedes that there is no "technical violation of [defendant's] Sixth Amendment rights." He asserts instead that this Court should more broadly consider whether officers acted outrageously in persuading defendant to act as a CI and later charging him after his cooperation did not pan out.

Even under defendant's expanded theory of the outrageous government conduct doctrine, his argument is unavailing.

Defendant was not required to commit to cooperating immediately and he was allowed to consult with his attorney before ultimately deciding to do so.  He also offers no rebuttal to the Government's assertion that he was terminated as a CI only after he engaged in contemporaneous criminal conduct.

Defendant fails to surmount his high burden of demonstrating that government officials acted outrageously. Accordingly, the motion to dismiss will be denied.

### ORDER

For the foregoing reasons, the motions of defendant to suppress evidence (Docket No. 53) and dismiss the indictment (Docket No. 57) are **DENIED**.

**So ordered.**

    /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  September 22, 2023